UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:18-cr-235-T-36AAS

COREY DAMOND SMITH, JR.
_____/

# **O R D E R**

This matter comes before the Court upon Defendant's Motion for New Trial (Doc. 84) and the Government's response thereto (Doc. 88). In the motion, Defendant contends that he is entitled to a new trial because he was prejudiced by: (1) the erroneous admission of Exhibit 7, and (2) the jurors' exposure during deliberations to evidence that was not admitted during trial. Doc. 84. The Government argues that a new trial should not be granted because (1) Exhibit 7 was admissible as an excited utterance, and (2) the extrinsic evidence was duplicative, exposure to the evidence was not the result of any misconduct, the Court's determination upon learning of the extrinsic evidence during deliberations that the evidence was not materially different from other evidence was correct, the curative instruction given by the Court was sufficient to cure any prejudice, and the Government's case was strong. Doc. 88. The Court heard argument on the Motion on April 26, 2019. The Court, having considered the motion and being fully advised in the premises, will grant Defendant's Motion for New Trial.

## I.  BACKGROUND

Defendant Corey Damond Smith, Jr. was indicted for one count of knowingly and intentionally distributing a controlled substance, the use of which resulted in the death of D.B. from such substance, which violation involved a quantity of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and which is punished under 21

U.S.C. § 841(b)(1)(C), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. Doc. 1. The indictment also sought various forfeitures in the event of conviction. *Id.* The case proceeded to trial on February 25, 2019.

The evidence at trial established that on November 13, 2017, D.B., a heroin user, died after his girlfriend, Tonya Molish injected him with drugs. Molish called 911 when she could not resuscitate D.B. Later that day, Molish was interviewed by Detective Carlos Cuevas of the Hillsborough County Sheriff's Office. Doc. 88-2. At the beginning of the interview, Cuevas requested Molish raise her right hand and swear to tell truthful and factual information. *Id.* at 2. During the interview, Molish describes the events leading up to and following D.B.'s death, and her description includes purchasing heroin from Defendant. *Id.* at 9.

During Molish's trial testimony, the Government offered the recording of the interview into evidence as Exhibit 7. The defense objected to the recording on the basis of hearsay and the Government argued that it was admissible as an excited utterance. After listening to the initial portion of the recording, the Court admitted Exhibit 7 as an excited utterance. However, after the recording continued to play, the Court raised concerns regarding the exhibit. The Court called a sidebar and inquired about Exhibit 7, as the recording had begun to sound more like an investigatory interview of Molish, rather than an excited utterance. After the conference at sidebar, the Government elected to stop playing the interview and proceeded with its direct examination of Molish.

The trial proceeded, and on the sixth day, the jurors began deliberations. Doc. 67. During deliberations, the jurors submitted two written questions to the Court, one of which was whether there was a recorded interview by Cuevas entered into evidence from the day of the incident because they could not find the disk. Doc. 72-1 at 1. The Court advised the jury that the recording

was admitted into evidence as Government's Exhibit 7. The jury responded in writing that they "were under the impression that the recording [they] heard as Ex. 7 was taken on the day of the incident however in listening to it, it is from several months later . . . possibly w/a different detective." *Id.* at 2.

The Court examined the exhibit and learned that the jury received a different recording, which was also an interview of Molish, but it was conducted several months later on February 9, 2018, by Detective R. LaGasse of the Hillsborough County Sheriff's Office. Doc. 88-1. This interview ("Exhibit 8") was never admitted as evidence. The Court learned that the disk for Exhibit 8 was inadvertently placed in the sleeve for Exhibit 7. Doc. 86 at 3. After quickly reviewing the transcripts of both recordings, the Court determined that the content of the interviews was substantially similar. Accordingly, the Court instructed the jury as follows:

> I'm going to instruct you to disregard the information from Exhibit 8, as it was not evidence that was admitted in this trial, and as you know from my instructions, your verdict has to be based only on the evidence submitted.
> I am now sending the correct Exhibit 7 back there with you. This was a mistake, I'm not sure how it occurred, how the wrong disk got into the wrong jacket, but it occurred and it should not have.
> So you will now go back to the jury room with the correct exhibits, including the correct Exhibit 7, and you are to disregard what you previously heard on the recorded interview that was, as you correctly noted, taken at a later time but never offered into evidence.

*Id.* Later that day, March 4, 2019, the jury returned a verdict of guilty. Doc. 71.

Defendant filed the instant Motion for New Trial on March 15, 2019. The Court heard oral argument on the Motion for New Trial and expressed concern regarding the effect that Exhibit 8 had on deliberations, especially when the jury had been deliberating over two hours when the error was discovered. In response to the Court's concern, the Government suggested that the Court recall the jury and inquire whether they obeyed the Court's instruction to disregard Exhibit 8. The Court took the matter under advisement.

3

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Eleventh Circuit has described this as a "broad standard." *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994). Additionally, "[t]he decision to grant or deny the new trial motion is within [the] sound discretion of the trial court and will not be overturned on appeal unless the ruling is so clearly erroneous as to constitute an abuse of discretion." *Id.* (quoting *United States v. Wilson*, 894 F.2d 1245, 1252 (11th Cir. 1990).

## III. DISCUSSION

### A. Admissibility of Exhibit 7 as an Excited Utterance

An out of court statement that would otherwise be inadmissible as hearsay may be admitted as evidence where it is "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evidence 803(2). "The so-called excited-utterance exception to the hearsay rule has three requirements: (1) a startling event; (2) the making of the statement while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event." *Excited Utterances*, 11A Cyclopedia of Federal Procedure, § 47:36 (3d Ed.). "The typical excited utterance is short and to the point, often a blurted out exclamation or assertion. An extended or detailed narrative of recent events rarely qualifies as an excited utterance." *Spontaneity*, Hearsay Handbook § 9:4 (4th Ed.). Similarly, to be an excited utterance, "the declarant's state of mind at the time that the statement was made must preclude conscious reflection on the subject of the statement." *Excited Utterances*, § 47:36. In evaluating whether the declarant spoke under the stress of the event's excitement, courts consider factors including "the amount of time between the event and that statement, the nature of the event,

the subject matter of the statement, the age and condition of the declarant, the presence or absence of self-interest, and whether the statement was volunteered or in response to questioning." *Id.*

"While the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event." *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010). Additionally, "excited utterances can be made in response to an inquiry." *Excited Utterances (Rule 803(2))—Responses to Questioning*, 30B Fed. Prac. & Proc. Evid. § 6819 (2018 ed.) (internal quotation omitted). Statements made in response to questioning are usually only excluded if made during "detailed, interrogation-style questioning that might negate the use of the excited utterance exception." *Id.* (quoting *United States v. Graves*, 756 F.3d 602, 606 (8th Cir. 2014)). The United States Court of Appeals for the Tenth Circuit has stated that "[i]f the declarant's excitement level is severe, then even statements made in response to questioning may be admitted." *United States v. Magnan*, 863 F.3d 1284, 1293 (10th Cir. 2017) (quoting *United States v. Frost*, 684 F.3d 963, 974 (10th Cir. 2012) (overruled in part on other grounds by *United States v. Bustamante-Conchas*, 850 F.3d 1130 (10th Cir. 2017)). Similarly, the Seventh Circuit has affirmed the admission of statements that were made in response to questions when the responses "were not the result of reflective thought." *Webb v. Lane*, 922 F.2d 390, 394-95 (7th Cir. 1991). On the other hand, the Eighth Circuit has held that where self-serving statements are made in response to questioning after a person is in custody, the excited utterance doctrine does not apply. *United States v. Elem*, 845 F.2d 170, 174 (8th Cir. 1988).

The interaction between Cuevas and Molish in Exhibit 7 certainly started out as an excited utterance, despite Cuevas asking Molish to raise her right hand and swear to tell the truth. Following her doing so, Cuevas asked a general, open-ended question—"[t]ell me what happened." Doc. 88-2 at 2. Molish proceeded to do so, with interjections by Cuevas. However,

the interaction gradually becomes more of an interrogation. For example, Cuevas repeatedly asked Molish what D.B. told her before she injected the heroin, with questions such as "[b]ut did he ask you to hit him?" and "[s]o you always inject him?" and "[a]t his . . . is it at his request?" *Id.* at 9. He continued this line of questioning, asking repeated questions clarifying how long she had been shooting D.B. up and when D.B. began using heroin. *Id.* at 9-12. Similarly, Cuevas asked repeated questions about what Molish did after injecting D.B. with the heroin, often asking her to repeat information she already provided. *Id.* at 12-20.

The Court agrees with Defendant that Exhibit 7 was not admissible in its entirety, as an excited utterance. Although some statements are the product of open-ended questioning and responses made while Molish was under the excitement of D.B.'s death, other statements were the product of detailed questioning and reflection. Accordingly, certain portions of Exhibit 7 were erroneously admitted as an excited utterance.

Regarding the content of Exhibit 7, as the Court indicated while the jury was deliberating, Exhibit 7 does not contain new *material* information that was not properly heard by the jury. Molish testified during the trial to the contents of the interview. She identified Defendant in Court. She explained the events leading to and following D.B.'s death. The bigger issue is whether Molish's testimony was improperly bolstered by not only the jury's consideration of Exhibit 7, but also Exhibit 8. The cumulative effect of this evidence is discussed more fully below in connection with analysis of the jury's exposure to and consideration of Exhibit 8.

### B. Consideration of Extrinsic Evidence

"The sixth amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence produced at trial." *United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984). "Extrinsic evidence, evidence that has not been subject to the procedural safeguards of a fair trial, threatens such constitutional safeguards as the defendant's right of confrontation, of cross-examination, and of counsel." *Id.* "When jurors consider extrinsic evidence, a new trial is required if the evidence poses a reasonable possibility of prejudice to the defendant. Prejudice from extrinsic evidence is assumed in the form of a rebuttable presumption and the government bears the burden of demonstrating that the consideration of the evidence was harmless." *Id.* (internal citations omitted).

In evaluating whether the government has rebutted the presumption of prejudice, courts consider the totality of the circumstances surrounding the introduction of the extrinsic evidence to the jury. *United States v. Ronda*, 455 F.3d 1273, 1299 (11th Cir. 2006). The non-exhaustive list of factors considered by the Court include: "(1) the nature of the extrinsic evidence; (2) the manner in which the information reached the jury; (3) the factual findings in the district court and the manner of the court's inquiry into the juror issues; and (4) the strength of the government's case." *Id.* at 1299-1300. The defense concedes that the second factor suggests harmlessness. Doc. 84 at 5. Therefore, it need not be discussed.

**1.     The Nature of the Extrinsic Evidence**

Defendant contends that because Molish was "the lynchpin witness for the government," this factor weighs in favor of finding prejudice. Doc. 84 at 5. The Government argues that the evidence was cumulative and actually harmed Molish's credibility, because she gives inconsistent information from previous interviews, is not under the emotional distress demonstrated by Exhibit 7, and is "snippy" with the officer in Exhibit 8. Doc. 86 at 3. Specifically, Molish provides

7

inconsistent information in Exhibit 8 regarding the time at which she bought drugs and when she provided the EBT card to Defendant in exchange for the heroin.

Because the information in both Exhibits 7 and 8 was cumulative, in general, of Molish's testimony during trial, this factor could lean towards a finding of harmlessness. However, based on the potential for bolstering of Molish's testimony, this factor weighs in favor of a finding of prejudice. Specifically, by reviewing and considering Exhibit 8, the jury heard Molish repeat the same narrative for a third time. Thus, the jury knew that Molish maintained the same story on the day of the incident, months after the incident, and more than a year after the incident. Such repetition could stick in the minds of the jurors and lend credibility to Molish. As Defendant argues, Molish's "credibility was a core issue of the trial from beginning to end," and the defense attempted to show reasonable doubt based on "her story about the source of the drugs, the manner in which she injected them, how she called 911, and what she did with the paraphernalia after the injection and 911 call." Doc. 84 at 5. Repeated exposure to evidence that was either inadmissible or never admitted undermines these defense theories. Thus, this factor weighs in favor of finding the exposure to be harmful.

### 2. Factual Findings and Inquiry into Juror Issues

Defendant argues that although the Court found no significant differences between Exhibits 7 and 8, this factor weighs in favor of a finding of prejudice because the defense could have emphasized the inconsistencies in Molish's testimony to bring her credibility into question, and that any consistencies bolstered Molish's testimony. Doc. 84 at 6. The Government argues that the curative instruction cured any potential prejudice because juries are presumed to follow their instructions. Doc. 88 at 4-5. The Court agrees, in general, that juries are presumed to follow the Court's instructions. Here, however, the jury listened to Exhibit 8, and in fact it was their

8

consideration of the exhibit that brought this matter to the Court's attention. They had been deliberating for over two hours when it was discovered that they received the wrong exhibit. This was not a situation where the wrong document was inadvertently shown to the jury during examination of a witness or a witness blurted out an answer that he was not to mention and immediately a curative instruction was given. Under the circumstances in this case, the Court concludes that the curative instruction was insufficient to "unring the bell." This factor weighs in favor of a finding of prejudice.

### 3. The Government's Case

The Government argues that the case against Defendant was strong because the evidence before the jury included: (1) Molish's in-person identification of Defendant as the drug dealer; (2) evidence that Defendant used D.B.'s EBT card on the date of death; (3) cell phone evidence placing Defendant in the area where the EBT card was used during Defendant's use of the EBT card; (4) cell phone evidence placing Defendant in the area where the fentanyl was distributed; and (5) video evidence of Defendant using the EBT card.[1] Because of the evidence against Defendant, the Government argues that "[t]here was no plausible alternative to Smith's being the distributor, nor was there advanced a plausible motive for fabrication or misidentification." Doc. 88 at 6. Defendant contends that because Molish's testimony was a central part of the Government's case, the extrinsic evidence bolstering her credibility was particularly harmful. Doc. 84 at 6. The Court agrees with Defendant.

Overall, in considering the factors above, the Government has not met its burden of rebutting the presumption of prejudice that arose by the jury's exposure to Exhibit 8 during the deliberation process. While the jury was deliberating, they undoubtedly considered Molish's

---

[1] The video evidence does not clearly depict the Defendant as the person using the EBT card.

statements made in Exhibit 8.  There is a reasonable probability that the jury was unable to simply ignore evidence it had already considered for two hours during the deliberative process, despite the Court's curative instruction.  Accordingly, Defendant is entitled to a new trial.

### C. Jury Inquiry

During oral arguments, the Government suggested that the Court recall the jury to ask whether they obeyed the Court's instruction to disregard Exhibit 8 in reaching their verdict.  The Court will decline to do so.

Federal Rule of Evidence 606 provides as follows with respect to inquiring into the validity of a verdict:

> **(1) Prohibited Testimony or Other Evidence.**  During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
>
> **(2) Exceptions. A juror may testify about whether:**
>
>     (A) extraneous prejudicial information was improperly brought to the jury's attention;
>     (B) an outside influence was improperly brought to bear on any juror; or
>     (C) a mistake was made in entering the verdict on the verdict form.

Additionally, Local Rule 5.01(d) similarly provides as follows:

> No attorney or party shall undertake, directly or indirectly, to interview any juror after trial in any civil or criminal case except as permitted by this Rule.  If a party believes that grounds for legal challenge to a verdict exist, he may move for an order permitting an interview of a juror or jurors to determine whether the verdict is subject to the challenge.  The motion shall be served within fourteen (14) days after rendition of the verdict unless good cause is shown for the failure to make the motion within that time.  The motion shall state the name and address of each juror to be interviewed and the grounds for the challenge that the moving party believes may exist.  The presiding judge may conduct such hearings, if any, as necessary, and shall enter an order denying the motion or permitting the interview.  If the interview is permitted, the Court may prescribe the place, manner, conditions, and scope of the interview.

Rule 606 and Local Rule 5.01 work together to safeguard the jury system. *United States v. Snipes*, 751 F. Supp. 2d 1279, 1284 (M.D. Fla. Nov. 19, 2010).

The United States Supreme Court has explained that there are " 'long-recognized and very substantial concerns' supporting 'the protection of jury deliberations from intrusive inquiry.' " *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 866 (2017) (quoting *Tanner v. United States*, 483 U.S. 107, 127 (1987)). The concerns regarding impeaching a verdict through juror testimony included potential harassment of jurors by attorneys attempting to attack verdicts, disruption of the finality of the process, undermining jurors' willingness to return an unpopular verdict, and undermining the community's trust in the system. *Id.*

"District courts are subject to very stringent limitations on their authority to question jurors about their deliberations, and to use one or more juror's testimony to impeach the verdict of all." *United States v. Siegelman*, 640 F.3d 1159, 1185 (11th Cir. 2011). "Post-verdict inquiries into the existence of impermissible extraneous influences on a jury's deliberations are allowed under appropriate circumstances, so that a 'juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind.' " *Llewellyn v. Stynchcombe*, 609 F.2d 194, 196 (5th Cir. 1980).

To determine that Defendant was not, in fact, prejudiced by the jury's exposure to extrinsic evidence, the Court would be required to inquire as to the deliberative process and what impact the evidence had on the deliberative process. The Court may not do so. Accordingly, recalling the jury would not be a productive endeavor. Instead, to ensure Defendant's Sixth Amendment rights are protected and the interests of justice are served, the Court will grant Defendant a new trial.

Accordingly, it is hereby **ORDERED**:

1. Defendant's Motion for New Trial (Doc. 84) is **GRANTED**.

2. The Clerk is directed to vacate the Adjudication of Guilt (Doc. 75) entered on March 4, 2019.

3. This case will be scheduled, by separate notice, for a status conference to be held on June 18, 2019 at 9:30 a.m. so that it can be rescheduled for trial.

**DONE AND ORDERED** in Tampa, Florida on May 31, 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any